## Case No. 6,325.

### HEINE v. LEVEE COM'RS.

[1 Woods, 246.] [1]

Circuit Court, D. Louisiana. April Term, 1872.[2]

SPECIFIC PERFORMANCE — TAXATION — POWER OF UNITED STATES COURT TO ORDER—BONDS OF PARISHES IN LOUISIANA.

1. When every part of a contract has been executed except the payment of money, the remedy at law (if one exists) is fully adequate to the case; for by an action at law it is precisely the unpaid money which is recovered, with, perhaps, damages for its detention.

[See note at end of case.]

2. A bill in equity against a board of levee commissioners to obtain, by means of the enforcement of the levy and collection of a tax by them, payment of money due on bonds, which they had issued under authority of an act of the legislature, and which directed them to levy an annual tax to pay the interest, and to create a sinking fund for the payment of the principal of the bonds, cannot be maintained as a bill to enforce the specific performance of a contract.

[See note at end of case.]

3. Nor can such a bill brought by the holders of the bonds against the board of levee commissioners be maintained as a bill for an account.

4. A court of equity has general jurisdiction of liens, inasmuch as a court of law cannot, except by execution, order a sale of the property which is subject to the lien, and cannot conveniently distribute the proceeds to those who may be entitled thereto.

5. The power of taxation belongs to the legislative department of the government. The judicial department has no general jurisdiction over the subject.

[Cited in U. S. v. City of New Orleans, Case No. 15,871; Northern Pac. R. Co. v. Traill Co., 115 U. S. 600, 6 Sup. Ct. 201; Thompson v. Allen Co., 115 U. S. 550, 6 Sup. Ct. 143.]

[See note at end of case.]

6. If officers who are charged with the duty of laying or collecting taxes, refuse to perform their functions, the courts, in a clear case of failure, and at the instance of a party directly interested, can, by the prerogative writ of mandamus, compel them to perform acts which are ministerial, as distinguished from those which are judicial or discretionary.

[Cited in U. S. v. City of New Orleans, Case No. 15,871; Meriwether v. Garrett, 102 U. S. 517.]

7. The power of compelling parties, after a judgment has been rendered, to pay the amount thereof, or of raising the money by the sale of their property, is an entirely distinct power from that of taxation, and is the special prerogative of the courts.

[See note at end of case.]

8. A bill praying that a board of levee commissioners, the state district judge or a receiver or commissioner to be appointed by the court, be required to levy a tax for the purpose of raising the money alleged to be due to complainants, in a case where no judgment has been obtained, cannot be maintained.

[See note at end of case.]

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 19 Wall. (86 U. S.) 655.]

[This was a bill in equity by Amand Heine, Michael Heine, Hippolite Piquet, and A. Tattet, bondholders, against the board of levee commissioners for the levee district parishes of Madison and Carroll. Heard on demurrer to the bill.]

Thomas Allen Clark and Thomas L. Bayne. for complainants.

John A. Campbell, S. R. Walker, C. L. Walker, J. C. Seale, and J. E. Leonard, for defendants.

BRADLEY, Circuit Justice. This bill is filed by the holders of bonds issued by the levee commissioners, defendants, to compel them to levy a tax as required by law, to pay the interest due on said bonds, and the installments due on the sinking fund provided therefor. The defendants have filed a demurrer.

It is unnecessary to examine several interesting questions that were raised in the argument of the cause. It may be disposed of by a reference to the main point involved, the general equity of the bill. The power of taxation belongs to the legislative branch of government. The judicial department has no general power over the subject. If the officers, who are charged with the duty of laying or collecting taxes, refuse to perform their functions, the courts, in a clear case of failure, and at the instance of a party directly interested, can, by the prerogative writ of mandamus, compel them to perform acts which are ministerial, as distinguished from those which are judicial or discretionary. This is all that the judicial department can do on the subject, unless the legislature has expressly conferred upon it further powers. No such power seems to have been conferred in the present case. The power of compelling parties in judicial proceedings to pay sums of money awarded against them, or, of raising the money by a sale of their goods, lands and other assets, is an entirely distinct power from that of taxation, and is the special prerogative of the courts, by which they are enabled to enforce their judgments. But this power is never exercised until a judgment has been rendered; and is then exercised directly upon the person of the debtor, commanding him to pay, and attaching his person on his failure to comply; or directly upon his property by seizure and sale. In this case no judgment has been obtained; and the prayer of the bill is, not to issue an execution for the seizure and sale of the property, but to require the board of levee commissioners for the levee district in the parishes of Madison and Carroll, or the judge of the Thirteenth judicial district, or a receiver or commissioners to be appointed by the court, to levy a tax for the purpose of raising the money alleged to be due to the complainants. I am not aware of any precedent for such a bill, and am of opinion that it cannot be maintained. Where a political district is incorporated and becomes liable to pecuniary obligations, the corporation may be sued and judgment may be rendered for the debt. Execution may then issue against the property of the corporation; but if it have no property, the creditor has no remedy except to apply for legislative aid. The legislature usually extends its aid in such cases, by directing special proceedings to be had in order to raise the amount of the judgment by taxation. But no such legislation is referred to in this case. The bill must be dismissed.

This cause was afterwards argued on a motion for rehearing by Mr. Clarke and Mr. Campbell at chambers, in Washington City, before Mr. Circuit Justice BRADLEY, who expressed his views of the case more fully in the following opinion:

The complainants are holders of certain bonds of the defendants, dated April 1, 1859, and issued about that period. They file this bill on behalf of themselves and other bondholders, for the purpose of obtaining payment of these bonds or the interest due thereon, by means of a tax to be assessed upon the levee district represented by the defendants, consisting of the alluvial lands of Madison and Carroll parishes, or for such other relief as the court can grant. It appears by the bill, that on the 10th day of March, 1859 [1 Laws La. 12], the legislature of Louisiana passed an act by which the board of levee commissioners for the levee district in the parishes of Madison and Carroll was invested with corporate powers, and authorized to issue bonds to the amount of $400,000 to enable it to take up its outstanding liabilities. The bonds were not to run longer than eight years, and the board was directed to levy an annual tax on the district to pay the interest and create a sinking fund for meeting the principal; the tax to be five cents per acre on the alluvial lands, and a sufficient percentage on the state and mill tax to raise in the whole $70,000 the first year, and $65,000 the subsequent years. One of the New Orleans banks was to be selected as the fiscal agent of the board, to receive and disburse the moneys. If the levee commissioners should neglect to levy the tax, it was to be levied by the judge of the district, in connection with the several parish recorders. Under this act the board issued its bonds to the prescribed amount, and the proceeds thereof were applied to the purposes for which they were authorized; and the complainants became the holders of a large amount of the loan. The board assessed the prescribed tax in October, 1859, and in May, 1861, but no tax has ever been levied since, although repeated applications for that purpose have been made to the board and to the district judge. In March, 1867, the legislature, to relieve the parishes, authorized the board of levee commissioners to

issue new bonds for the arrears of interest, and to extend original bonds for a period of twenty-five years; and reduced the annual assessment to $55,000. This arrangement was accepted by the bondholders and carried out by the levee commissioners. But no money has ever been raised, and the levee commissioners have pretended to resign their offices; and as a corporation, they have no property on which execution can be levied. The bill prays for an account, and an assessment of the necessary tax for paying the arrears due on the bonds; and, in case of refusal on the part of the commissioners and the district judge, that commissioners or a receiver may be appointed by the court to levy the tax. To this bill the defendants demurred, and on argument in May last, a decree was made dismissing the bill. A rehearing having been granted, the case has now again been argued before me.

At the first view it struck me as unusual to file a bill in equity for the mere collection of money due on a bond. The obvious remedy seemed to be an action at law. The allegation of apprehended difficulties in obtaining satisfaction of a judgment, if one were obtained, did not seem to me sufficient excuse for omitting to obtain one. A decree for compelling the defendants to levy a tax seemed tantamount to a mandamus under a different name; and the alternative of appointing commissioners or a receiver to levy the tax under the direction of the court, especially before the recovery of a judgment at law, seemed like an assumption of the taxing powers which belong exclusively to the legislative department. But the counsel for the complainants has very strenuously insisted that there are grounds on which the bill may be sustained. Amongst others, he contends that it may be rested on the doctrine of specific performance; that the statute of 1859 raised an implied contract, on the part of the levee commissioners, to levy an annual tax for defraying the interest and the installments of the sinking fund accruing on the bonds; and that this contract could be specifically enforced. It seems to me that the whole contract of the board with the complainants is contained in the bonds. It is simply a contract to pay money. It was the duty of the board, it is true, as officers of the levee district, to levy the tax. But this was a duty imposed by law—equivalent (and no more) to the duty of ordinary parish or county officers, to levy the necessary taxes for discharging the liabilities and meeting the wants of their several jurisdictions. The statute may be a contract on the part of the state with the bondholders; but it is not a contract on the part of the levee commissioners. It simply imposed on them an administrative duty as public officers. Regarding the contract of the levee commissioners as a contract for the payment of money only, and binding at law, I can find no authority for decreeing its specific performance. The cases referred to, in which contracts for the purchase of stock, debts, and other chattels, have been enforced, have always had in them the circumstance of the defendant's refusal to accept the purchased articles and carry out his purchase. It was to enforce the purchase, and to obtain the price as a consequence, that the decree was sought. Had the articles been delivered and accepted, an action at law would have lain for the price, and chancery would have had no jurisdiction. The cases would then have been more like the present case—simply a claim for money on an executed consideration.

The case of Buxton v. Lister, 3 Atk. 383, which was much relied on, was one in which the defendants repudiated their contract, by refusing to cut and take the timber which they had agreed to purchase, so that the complainant could not recover the price, but could only maintain an action for damages for the breach of the contract. Lord Hardwicke entertained the bill, which he would not have done for the mere recovery of the price. The other cases referred to under this head are all to the same effect. When every part of a contract has been executed except the payment of money, the remedy at law (if one exists) is fully adequate to the case; for by an action at law, it is precisely the unpaid money which is recovered, with, perhaps, damages for its detention. "The ground of this jurisdiction," says a late writer, referring to specific performance, "being the inadequacy of the remedy at law, it follows that where that remedy is adequate, chancery will not interfere to compel specific performance. It is on this ground that the court refuses generally to entertain suits in respect of government stock or chattels, and in all cases where the contract is satisfied by a mere payment of money." Fry, Spec. Perf. p. 6. But even if the bonds had contained a covenant to levy the tax prescribed by the statute, I question whether the contract could have been specifically enforced. It would have amounted to nothing more than a covenant to raise the money in a particular way, which (unless something be hypothecated or pledged) can hardly be a ground for a specific performance. Suppose that John Doe gives me his bond for ten thousand dollars, payable in ten equal annual installments, with interest, and agrees to raise the money by cutting the wood on five acres of his timber land each year, and fails to do it, can I file a bill for specific performance? Must I not sue at law on my bond? Does the special manner in which he agrees to raise the money lay any foundation for an equitable proceeding? I think it does not. In my judgment, therefore, this bill cannot be sustained as a bill for a specific performance. If it could, why should not such a bill be resorted to for the collection of all debts against municipal corporations? Their liabilities have to be discharged by means of taxation, and it is the legal duty of their officers to lay the taxes to

do it. Why compel their creditors to sue at law when they could take the short course of a bill to compel an assessment of taxes and payment at once?

Another ground on which it is urged that the bill may stand is, that of account. But I fail to perceive its admissibility. The fundamental idea of an account is, that the accountant has received moneys of the claimant which he ought to pay over. The moneys received by a bailiff, agent, receiver, trustee, etc., are not his own. They do not become his. They belong to his principal, and for them he should account. Mutual accounts of debts and credit have also (though somewhat inaccurately), been added to the general head of account. But, generally speaking, a mere debt is not ranked under that head; that is, it cannot be proceeded for by an action or a bill for an account. Now, here, there is nothing but a debt due. Nothing is charged to be held by the defendants for the complainant by way of agency, trust, or other fiduciary relation. The mandamus cases referred to do not apply. In all the county bond cases cited from the Reports of Howard and Wallace, judgments had been first obtained, and then writs of mandamus were sought to compel the county officers to perform their clear duty levying the tax requisite to pay the judgments. No mandamus is sought in this case, and if there were, none could be granted on this bill. But the counsel for the complainants contend that they have a lien or privilege upon the lands of the levee district for the payment of these bonds, and that this court can enforce that lien. It is true, as supposed, that a court of equity has general jurisdiction of liens, inasmuch as a court of law cannot (except by execution) order a sale of the property which is subject to the lien, and cannot conveniently distribute the proceeds to those who may be entitled thereto. But I have not been able to perceive any lien or privilege existing in this case. The lands referred to are not under mortgage to the complainants. The act of 1859 does not make the bonds a lien on them. It only authorizes a tax to meet the installments accruing; and this tax is not directed to be levied solely on the lands; it is partly personal. By the general laws of the state, when these bonds were issued, it is true, riparian owners were bound to keep up and repair levees on or in front of their lands; and in case of their failure so to do, it was made the duty of the police jury of the parish to have the necessary repairs made, either by a requisition on other planters in the neighborhood, or by adjudicating the work to the lowest bidder; and the parties doing the work (as well as the parish) had as security for repayment, a privilege on the property to whose levees the work was done in preference to other creditors. Civ. Code, art. 3216; Act 1829, §§ 31, 40. But the special laws relating to the parishes of Madison and Carroll, took the duty of repairing the levees out of the hands of the riparian proprietors, and imposed it upon the board of levee commissioners, subjecting the lands and inhabitants benefited to an annual tax to be assessed by the commissioners, for the purpose of raising a general fund to pay all expenses incident to all levee constructions and repairs in the district. Therefore the land owners are not delinquent as regards the levees. Their whole duty consists in paying the taxes when they are lawfully assessed; and the lands themselves are no longer subject to a lien or privilege for the work done. What the court would do on a creditor's bill filed after judgment at law, to aid the complainants in obtaining satisfaction, is not now the question. Whether, if every effort to get an assessment made, should fail, the court would put forth its hand and find a remedy, or whether further legislation would be necessary to enable it to do so, I am not called upon to decide. I am satisfied that the bondholders, simply as such, have no equity upon this bill.

In this view of the case, it is unnecessary to examine the objection raised by the defendant's counsel against the claim of the complainants, on the ground that it is retrospective in its character, and that a retrospective tax (that is, a tax which ought to have been levied in previous years, and was not levied) cannot be levied. It may be remarked, however, that the English parish cases referred to as authority for this proposition are hardly applicable, inasmuch as there, the parish officers had no authority to borrow money on the credit of the parish, and, of course, none to raise a tax to pay loans. But, in this case, the legislature expressly authorized the loan to be made, and its authority to do so cannot be questioned. I am still of opinion that the bill must be dismissed, and the decree is therefore affirmed. The clerk will enter a decree accordingly.

[NOTE. From this decree the complainants appealed to the supreme court (19 Wall. [86 U. S.] 655), where, in an opinion by Mr. Justice Miller, the decree of the circuit court was affirmed. Mr. Justice Clifford and Mr. Justice Swayne, however, dissented, and Mr. Justice Bradley did not sit. It was held that the power of taxation was a legislative, and not a judicial, function. It was not possible to treat the bill as a petition for a writ of mandamus, for to do that would be to ignore the line between equitable and common-law jurisdiction. Because a creditor cannot collect his debt at law, it is not the duty of a court of equity to devise a means of collection for him. Nor could the claim of the appellants be enforced on the ground of a lien, because taxes not assessed are not liens. Specific performance will be decreed only when, aside from real-estate contract, there is no adequate compensation to be had at law.]