THE STATE OF NEBRASKA, EX REL. THE CITY OF
LINCOLN, v. H. A. BABCOCK, AUDITOR OF PUBLIC
ACCOUNTS.

1. **Municipal Corporation:** AID TO INTERNAL IMPROVE-
MENTS. A city of the second class may make donations to
railroads or other works of internal improvement in an amount
in the aggregate not to exceed ten per cent of the assessed
valuation, and bonds issued for water-works which the city
owns, and for other city purposes, cannot be computed as a part
of such ten per cent.

2. ———: ———: CERTIFICATION. Bonds issued by a city as a
donation to a railroad must have the certificate of the secretary
and auditor of state indorsed thereon, and if such bonds do not
have such certificate such officers will not be required to certify
refunding bonds based on such prior bonds.

ORIGINAL application for mandamus.

*J. R. Webster* and *Allen W. Field*, for relator.

*William Leese, Attorney General* (*C. O. Whedon* with
him), for respondent.

MAXWELL, CH. J.

This is an application for a mandamus to compel the
defendants to certify $25,000 of refunding bonds issued
by the relator. It is alleged in the petition that, "under
the provisions of the statutes for the issue of bonds by
counties, towns, cities, and precincts in aid of works of
internal improvements, the city of Lincoln, pursuant to
regular proceedings for the calling of an election and sub-
mission of the proposition to the electors of said city, voted
to issue and did issue to the Lincoln and Northwestern
Railroad Company, a railroad corporation of this state, its
bonds in the sum of twenty-five thousand dollars, with
interest payable annually at the rate of eight per centum per

annum, which bonds were dated the first day of January, 1880, and were payable absolutely the first day of January, 1900, and at the option of the said city at any time after January 1st, 1885, and were issued to aid said railroad company in the construction of its road from said city of Lincoln to the city of Columbus in the state of Nebraska.

The said Lincoln and Northwestern Railroad Company duly constructed its line of road so to be constructed, and said bonds were to it duly issued and placed upon the market and sold, and ever since said city has paid interest upon said railroad bonds as it accrued and matured, and no question has ever been made as to the validity of said bonds as the obligation of said city.

5th. Prior to the first day of July, 1885, the city of Lincoln exercised its option to pay said bonds before maturity, and called said bonds for presentation and payment July 1st, 1885, and the holders of said bonds presented the same for payment in response to such call, and the same now await payment as overdue obligations of said city.

6th. Not having the necessary funds with which to pay such bonds so called after two futile attempts to issue and sell bonds with which to meet its said call, by submission of the question to the electors of said city, both of which were ratified by the electors at elections duly held, the parties purchasing said new bonds signified to the mayor and council a preference to have such refunding bonds issued by authority of the mayor and council of said city, and the authority of the mayor and council of said city under an ordinance of said city and the authority conferred by sections eleven, twelve, and thirteen of chapter forty-five of the Compiled Statutes.

7th. Accordingly, and on the sixteenth day of November, 1884, after due proceedings in compliance with sections eleven, twelve, and thirteen of chapter forty-five of the Compiled Statutes of Nebraska, the mayor and council of said city by ordinance of that date duly authorized the

execution and issue of twenty-five bonds of one thousand dollars each, payable in twenty years and redeemable in five years from their date, to bear date December 20th, 1880, and to bear interest at the rate of five and one-half per centum per annum, payable semi-annually in the city of New York, which bonds said city sold at par and negotiated to Lewis and Lewis, who were the best bidders therefor and who are now ready and willing to pay therefor at par as soon as said bonds can be registered and their validity established.

8th.   All proceedings relative to the passage of said ordinance and issue of said bonds were, on the nineteenth day of January, 1886, duly presented to and filed with the respondents, and the fees for the registration of said bonds, but the respondents refused to register the same.   Copies of the proceeding for issue of said new bonds so required to be registered and for the issue of said former bonds so to be redeemed filed with the respondent, and are hereto annexed and made a part of this application.

10th.   In consequence of the refusal of respondents to register said bonds the relator is unable to complete and effect its negotiation for call and redemption of its 8 per cent bonds, or to effect and complete the issue of its lower interest, $5\frac{1}{2}$ per cent bond, greatly to the detriment of its credit and revenue.

11th.   The only reason that the respondents have for their refusal to register said new refunding bonds, as relator is advised, is, that heretofore, prior to the issue of $25,000 of bonds to aid said Lincoln and Northwestern Railroad Co., said city issued bonds for the following amounts and purposes, which, on the 21st day of December, 1880, were still outstanding, viz.:

Internal improvements.

Atchison and Nebraska R. R. Co., 1872............$ 9,500
Lincoln & Northwestern R. R. Co., 1880........... 25,000

     Total for internal improvement................$34,500

Other purposes.

To protect city from fire, 1872, under charter of
1871 .............................................$  20,000

To protect city from fire, 1874, under charter of
1871 .............................................  1,200

To fund floating debt, 1872, under charter of 1871.  30,000

To fund floating debt, 1875, under charter of 1871.  53,000

To build iron bridge within city, 1873, under
charter of 1871.................................  2,000

Total under charter..............................$106,200

Total for internal improvements............  34,500

Debt including total issue Lincoln and
Northwestern ..........................$140,700

12th.   The assessed valuation of said city at date of
such issue of $25,000 of bonds to the Lincoln and North-
western Railroad Co. was $1,236,661, and under the in-
ternal improvement act it had power to issue bonds to the
amount of $123,560 for such purpose, and had only issued,
including said bonds, the sum of $34,500.

13th.   But respondents insist that all indebtedness of
said city shall be computed (by terms and provisions of the
act to provide for funding warrants and outstanding in-
debtedness of counties, page 219, acts of 1877) in determin-
ing the validity of said $25,000 issued to the Lincoln and
Northwestern R. R. Co., and that such issue was in excess
of the powers of said city, which questions whether or not
all indebtedness shall be computed in determining the
amount the city may issue for aid of works of internal
improvements, and second, whether under the act for re-
funding outstanding bonds, 11, 12, and 13, chapter 45 of
Compiled Statutes, all outstanding bonds shall be computed
in determining the validity of such refunding bonds, and
then their registerable character are the sole questions in-
volved in this controversy.   The relator, however, further

shows that the outstanding obligations of said city now outstanding with date and purpose of issue are as follows, to-wit:

| | | |
|---|---:|---|
| Funding bonds 1872, to fund outstanding indebtedness .....................................$ | 30,000 | 00 |
| Funding bonds 1875, to fund outstanding indebtedness ...................................... | 53,000 | 00 |
| To Northwestern R. R. bonds in aid construction said road, for refunding which these bonds are issued.............................. | 25,000 | 00 |
| Water bonds 1882, 1st series..................... | 10,000 | 00 |
| Funding bonds 1882, to refund fire bonds.... | 20,000 | 00 |
| Water bonds 1884, 2d series..................... | 10,000 | 00 |
| Water bonds 1884, 3d series..................... | 90,000 | 00 |
| Total............................................$ | 238,000 | 00 |

Wherefore relator prays the issue of a peremptory writ of mandamus directed to H. A. Babcock, auditor of public accounts, and Edward P. Roggen, secretary of the state of Nebraska, that they certify and register said twenty-five bonds of the city of Lincoln, dated December 20th, 1885, of $1,000 each, bearing interest payable in the city of New York semi-annually at the rate of five and one half per cent per annum, payable after five years at the option of said city, and due in twenty years from this date."

There is also a stipulation in the record as follows: "It is hereby agreed by and between the parties hereto that the bonds issued to said Lincoln and Northwestern Railroad Company, dated the first day of January, 1880, and referred to in the application of the relator, were never registered by the auditor of public accounts, nor did said bonds or any of them ever have endorsed thereon a certificate signed by the secretary and auditor of state showing that said bonds were issued pursuant to law. This stipulation shall be considered as a part of the application for a writ of mandamus in this proceeding, and to said application as

amended by this stipulation respondents shall file a general demurrer."

The case was submitted on demurrer to the petition.

The first question presented is the authority of the city to issue bonds for the purpose indicated.

Sec. 2, art. 12 of the constitution provides that, "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever make *donations* to any railroad or other work of internal improvement, unless a proposition so to do shall have been first submitted to the qualified electors thereof at an election by authority of law; *Provided*, That such donations of a county with the donations of such subdivisions in the aggregate shall not exceed ten per cent of the assessed valuation of such county; *Provided further*, That any city or county may by a two-thirds vote, increase such indebtedness five per cent in addition to such ten per cent, and no bonds or evidences of indebtedness so issued shall be valid unless the same shall have endorsed thereon a certificate signed by the secretary and auditor of state showing that the same is issued pursuant to law."

It will be seen that *donations* to railroads or other works of internal improvement are limited to ten per cent of the assessed valuation, unless by a two-thirds vote five per cent additional is given.

The question as to what constitutes internal improvements has been decided by the court in a number of cases — *U. P. R. R. v. Commissioners of Colfax Co.*, 4 Neb., 450. *S. P. L. Co. v. Buffalo Co.*, 7 Id., 253. *Traver v. Merrick Co.*, 14 Id., 327—and need not further be considered. It is evident that bonds issued for the construction of waterworks to be owned by the city, or for debts of the city, do not come within the prohibition of the constitution—the limitation of ten per cent. This objection, therefore, is untenable.

2d. That said bonds "were never registered by the

auditor of public accounts, not did said bonds or any of them have endorsed thereon a certificate signed by the secretary and auditor of state showing that they were issued pursuant to law."

It was claimed on behalf of the city on the argument that the refunding bonds were merely a continuation of the original bonds, and that therefore it was unnecessary to register or have certified the original bonds which the refunding bonds were intended to take the place of. It was also contended by one of the attorneys that appeared for an intervenor that the requirement in sec. 2, art. 12 of the constitution, for the certification of bonds, applied only to the five per cent issued on a two-thirds vote in addition to ten per cent previously issued.

In answer to the first of these objections it is sufficient to say that the refunding bonds, though issued to take the place of the original bonds as representing the same debt, yet must be based upon bonds previously duly issued and certified. There is a plain provision of the constitution applicable to bonds issued as donations for railroads and other works of internal improvement, and neither the city nor the defendants can disregard it with impunity. Who is to blame for the failure to have such bonds properly certified does not appear, but until so certified it was the duty of the defendants to refuse to certify refunding bonds to take their place.

The second question is not free from difficulty because of the punctuation of the original section in the engrossed copy of the constitution, a period being placed before each of the *provisos*. While the punctuation might perhaps justify the construction that only the additional five per cent in excess of ten per cent was to be certified, yet it is evident that both the ten per cent and five per cent additional were intended, the language being that "no bonds or evidences of indebtedness *so issued* shall be valid unless," etc. That is, that all bonds or evidences of indebtedness

issued for the purposes designated must be certified as provided in the constitution. As the bonds which it was sought to refund in this case did not contain the certificate required by the constitution, it was the duty of the defendants to refuse to certify refunding bonds based thereon. The writ must therefore be denied.

WRIT DENIED.

THE other judges concur.