O'BRIEN et al. v. WHEELOCK et al.

(Circuit Court, S. D. Illinois. February 10, 1897.)

1. FINAL JUDGMENT.

An act of a state legislature providing for the construction of a levee and the issuing of bonds to pay the cost of construction, and also providing for the collection of assessments upon the lands bordering on the improvement "in the same manner as state and county taxes," was declared by a judgment of court to be unconstitutional and void in so far as it provided for that mode of collecting the assessments. Thereafter, in an action by the holder of certain of the bonds issued pursuant to that act against the commissioners appointed under the act, asserting a lien upon the lands benefited for the improvement for the amount advanced by him to the commissioners, the master reported, under a reference to him for that purpose, the amounts advanced by plaintiff and others who came into the suit, and the court made an order adjudging that the amounts thus reported were due the several complainants, and giving them liberty to file a supplemental bill against the owners of the lands benefited, to compel them to contribute to the payment of the amounts thus reported. *Held*, that this was not such a definite and certain adjudication as to be final and binding, and that the landowners against whom a supplemental bill was filed were not precluded from denying their liability.

2. LACHES.

As it was thirteen years after the act was declared to be unconstitutional, and nine years after leave was given to file the supplemental bill, before any step was taken against the present defendants, except those who were commissioners originally, there has been such laches as precludes the complainants from having the relief sought by the supplemental bill; the condition of the property and the relations of the parties having in the meantime greatly changed.

3. PURCHASER OF BONDS—SUBROGATION.

The purchaser in open market of the bonds, being a mere volunteer, is not subrogated to the equity of the contractors.

4. SAME—ESTOPPEL.

The purchaser of the bonds cannot set up any use made of the loan after he obtained his bonds as creating any estoppel, as his equities must be determined from the condition of things existing when he obtained the bonds.

5. JURISDICTION OF FEDERAL COURTS AS TAX COLLECTORS.

While the federal courts will, in a limited class of instances, compel the agents of a state to set in motion machinery existing under state authority for the collection of taxes, these courts will themselves neither create the machinery nor invest any person with the power to use the same.

John M. & John Mayo Palmer and Henry M. Duffield, for complainants.

Green & Humphrey, Thomas Worthington, Orr & Crawford, and Mathews, Wike & Higbee, for defendants.

ALLEN, District Judge. The long-extended litigation in this cause followed the act of the general assembly of the state of Illinois approved April 24, 1871, entitled "An act to provide for the construction and protection of drains, levees and other works." At that time a body of land of an average width of 3 to 5 miles, extending for more than 50 miles from the mouth of Fall creek, in Adams county, to Hamburgh Bay, along the east bank of the Mississippi river, and between it and the bluffs, or high-water mark of the river, containing 110,000 acres, was subject to periodical overflows of the Mississippi river. These bottom lands were sparsely populated, but the owners agitated the project of protecting and

reclaiming them, with a view of their becoming productive, and of greatly increased value. A supplemental act of the legislature was approved April 9, 1872, providing for the registration of bonds, and declaring that, when a court found that any work authorized by the act was a public benefit, "the same should be deemed a public work," and extending the powers of the commissioners, etc. Acting under these acts of the legislature, certain parties filed at the August term, 1871, of the county court of Pike county, a petition praying for the appointment of commissioners in the premises, and at the September term, 1871, the county court of Pike county appointed William Dustin, George W. Jones, and John G. Wheelock such commissioners, who accepted, qualified, and organized. In November, 1871, the commissioners filed a report to the county court, with a surveyor's estimates, including a map of the district, and a profile of the work to be done. At the December term, 1871, this report was approved, and a jury impaneled to examine the land, assess the damages and benefits, and make an assessment roll, which, it seems, was done, and the report of the same spread upon the record. The court directed that the assessments be paid in 10 annual installments, commencing in 1872, with interest from the 1st day of October, 1872. Copies of this order for Pike, Adams, and Calhoun counties were made to the commissioners, and were recorded in said counties on or before December 18, 1872. The commissioners proceeded to acquire title to the lands for the site of the levee, and contracted for the construction of the same, issued bonds, and disposed of the same to contractors for the levee work, and from these contractors complainants' testator purchased more than $200,000 of said bonds. Afterwards the commissioners filed another petition to raise an additional sum of money, and proceedings similar to the first were had therein, resulting in assessments amounting to $148,500. Upon the second assessment the commissioners issued, under the authority of the county court, $148,500 of bonds, and sold the same to the contractors engaged in the construction of the levee, and these bonds were also purchased by complainants' testator. The commissioners attempted to collect installments of interest under the provision of the act for the collection of assessments "in the same manner as state and county taxes." Certain of the landowners resisted this effort on the part of the commissioners, and the supreme court of the state of Illinois refused to enforce collection by the tax collector by means of extension on the tax books, holding that the sections of the act of 1871 providing for such collection were unconstitutional and void. After this decision a number of landowners provided a fund for repairing and protecting the levee by conveying to such commissioners by deed of trust about 30,000 acres of land, and authorizing them to make assessments on the land in each year in such amounts as were deemed necessary to keep said levee in repair. Money was raised under these deeds of trust, and from different sources, and expended on the levee, for its protection and reconstruction. On the 4th day of May, 1878, Francis Palms, the complainants' testator, filed a bill on behalf of himself and others in this court against the commis-

sioners. Said bill is the original bill to which the bill in this suit is the supplement. In it complainant Palms prayed, among other things, for a decree for an accounting of the moneys which he claimed to have advanced to the commissioners, and the interest thereon; that he have for such an amount a lien upon the levee and the works and the lands acquired by the commissioners for the site thereon, and upon the assessment and interest thereon upon the other lands described in Exhibit A; that the commissioners be ordered to proceed to collect said assessments and interest under the order and direction of the court; for the appointment of receivers to take charge of said levee, and all books and papers of said commissioners, and to collect, under the direction of said court, said assessments and interest; and for other and further relief. The commissioners answered the bill, setting up the action of the supreme court in holding the act of 1871 unconstitutional; denying that they were then, or ever had been, in the actual possession of any part of said levee except for the purpose of constructing, maintaining, and repairing the same; and claiming, among other things, that because of the registration of said bonds with the auditor of public accounts of the state of Illinois the bond owners had thereby elected the mode prescribed by the supplemental act of 1872 for the collection of interest on said bonds, and that they, said commissioners, were by said election relieved from the duty of looking after the same; that certain landowners had at all times opposed the proceedings which subjected their lands to assessments for benefits on account of said levee, and had refused to pay interest accruing on said assessments; and because of this other landowners, otherwise inclined to pay their assessments, saw the futility of doing so unless payment could be enforced against all alike, which resulted in a return by the township collector of all, or nearly all, of said landowners as delinquents. On the 13th day of March, 1879, the case having been set down for hearing upon bill and answer, the court passed an order or decree "that defendants (commissioners) retain the right of way, levee, and other works, and keep and preserve and protect the same under the order and control of this court for the benefit of complainants and all other persons interested therein; that complainants and all other persons who may have advanced money to the defendants for the right of way for the construction of said levee and other works, or who may be the holders of any of said bonds issued by the defendants to raise money for the purposes aforesaid, who may come into this suit, and contribute their proper proportion for the expenses thereof, have liberty to go before the master, and produce their bonds and coupons, and make proof of the amount due them of their principal and interest." The cause was referred to John A. Jones, master in chancery, to take proofs upon proper notice of the amounts due complainants and other parties, and to make report to the court, with such proofs of the amounts found due by him to each and every party who appeared before him, with the grounds of the several findings. The order or decree then proceeded as follows: "That, after the making of said report and the approval thereof by the court, the said complainants or other persons

have liberty to exhibit and file their supplemental bill or bills against any or all of the present or former owners of the land alleged in said bill to be benefited by said levee; to compel contribution of the payment of the amounts found due as aforesaid, and for such other and further relief as they may be advised they are entitled to. That complainants are at liberty to use the name of the defendants in such supplemental bill, if they are advised it is necessary for them to do so, upon tendering sufficient indemnity." It is also alleged in the present bill that after the rendition of the foregoing decree certain persons named therein went before the master, and made proof of their several holdings of bonds, and that on the 7th day of July, 1880, another order or decree was rendered in the original cause, which was, in substance, that the master had filed his report, together with certain exceptions of the defendants thereto; that such exceptions were overruled and the report confirmed, the court decreeing as follows: "And the court does further order, adjudge, and decree that there is due to the several complainants upon their respective coupons produced and proved before said master, and for interest upon the amount of such coupons up to the 1st day of July, 1880, as reported by said master, the following sums; that is to say, * * *—making an aggregate sum so found due to the complainants as aforesaid of $304,908.26. The above amounts are found to be due without prejudice."

It is fairly inferable from the entire bill that counsel for complainants treat the steps taken in this court before the present bill was filed as an adjudication, at least as to certain of the assessments described in Exhibit A, and as to the lands of some of the defendants. Certain orders or decrees made March 13, 1879, and July 7, 1880, are referred to as supporting this view. It will be observed that the original bill named as defendants only the commissioners Dustin, Jones, and Wheelock, and the first order refers the cause to the master to ascertain the sum due complainants, and it was also ordered that complainants or other persons have liberty to file supplemental bill or bills against the present or former owners of said lands, "to compel them to contribute, and ask for such further relief as complainants are advised they are entitled to." In the second order, July 7, 1880, the master to whom had been referred the question of amounts due complainants having reported, the court overruled certain exceptions of the defendants to such master's report, without prejudice, and permitted complainants, in their own names, or in the names of the commissioners, to proceed in this court against the lands of the landowners. Tested by the rules usually applied in ascertaining whether an order of court is a final and binding adjudication of the rights of persons and of property, these would seem to be wanting in some essential qualities. One of the first requisites of a valid, final adjudication is that it shall be definite and certain. Now, is it at all certain from these orders that it was supposed by complainants or counsel, or contemplated by the court, that the orders were binding upon any one other than the commissioners in their official capacity? Had it been thought that the former proceedings concluded the defendants, and sub-

jected their titles to the assessment in controversy, the present steps would probably not have been taken. Complainants, by their supplemental bill, have brought in by name over 1,000 defendants as having some interest in the property sought to be affected by the decree prayed for, and yet the logic of their contention seems to be that these defendants, in court for the first time, are precluded, by what is claimed to be a final adjudication, from raising the very questions on which the alleged liability depends. Probably these orders or decrees were only intended to be provisional, enabling complainants to ascertain the sum due, and get authority to bring in parties interested, with such interlocutory relief as they may have been entitled to, and this view is strengthened by the qualification "without prejudice" in the order confirming the master's report. It is further claimed by counsel for complainants that the commissioners were trustees for the landowners to the extent of binding the latter in litigation. No evidence in the nature of deed or other instrument declared such trust or gave such power. Ordinarily, no one can be bound by the act or representation of any trustee or agent, where the effect or validity of the act on which the right of representation depends is itself a matter of dispute. One of the first difficulties in the way of complainants to obtaining the relief sought by their bill is that of laches. The Webster Case,[1] declaring the act of 1871 unconstitutional, was decided by the supreme court of Illinois, January term, 1876, and from that time forward until May 4, 1889, neither Francis Palms, nor his representatives, nor any of the complainants attempted to take any step against the present defendants, except those who were commissioners originally. The original bill to which this is a supplement was filed against the said commissioners May 4, 1878, and no other landowners were made parties defendant. On July 7, 1880, the last order was entered in the original cause, and from that time forward, for almost nine years, no one moved. In the meantime the land embraced in the original Sny district was bought and sold and passed by succession and mortgage. Should it be conceded that the former orders or decrees had the force of solemn judgment, that force would have ceased long before the filing of the supplemental bill, for no effort or attempt was made to enforce these orders or decrees until the expiration of their lives as statutory liens. In Illinois neither a judgment at law nor a decree in chancery has any force against the parties after the lapse of seven years from its rendition. 2 Starr & C. Ann. St. p. 1386, c. 77, § 6. And a court of chancery generally follows the law in applying the statute of limitations, and where there are exceptions a sufficient equitable excuse should be alleged in the bill, and proved, to account for and justify the delay. Walker v. Ray, 111 Ill. 319, 320. But equity goes further than the law, and refuses relief on the ground of laches in many cases where there would be no bar to an action at law, usually founded upon some change in the conditions or relations of the parties or the subject-matter of the suit. Galliher v. Cadwell, 145 U. S. 372, 373, 12 Sup. Ct. 873. Francis Palms had leave July 7, 1880, to file an amended or supplemental bill. He lived till November 24, 1886,

[1] Unpublished.

and according to the testimony attended to his business until the day before his death. Neither he nor his executors took any steps whatever against the old commissioners until the present bill was filed, May 4, 1889. No excuse is alleged in the bill or shown by the testimony for this delay. In the meantime the condition of the property and the relations of the parties have greatly changed. But few of the parties connected with the original enterprise were living, or owned land in the district, when the supplemental bill was filed; and their holdings represent but a small fraction of the whole. It appears from the proof that, relying upon the decisions of the Updyke[1] and Webster Cases, and usually in ignorance of the case of Palms v. Wheelock, they expended large sums of money in rebuilding the levee, or in constructing a new one in part, and in making improvements and repairs on their land. An amount of money in excess of the amount expended by the original organization has been paid out as an absolute necessity for repairs and protection. It is, however, now insisted in a general way by complainants that Palms, the purchaser in open market of the bonds, was subrogated to the equity of the contractors. This position does not seem to be sound, when tested by authority. It was held in Suppiger v. Garrels, 20 Ill. App. 625, that:

"Subrogation in equity is confined to the relation of principal and surety and guarantors where a person, to protect his own junior lien, is compelled to remove one which is superior; and the cases of insurance. * * * Any one who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer."

And Justice Miller, in Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, after quoting approvingly the syllabus in Suppiger v. Garrels, supra, says:

"No case to the contrary has been shown by the researches of plaintiff in error, nor have we been able to find anything contravening these principles in our investigation of the subject. They are conclusive against the claim of the complainant here, who, in this instance, is a mere volunteer, who paid nobody's debt, who bought negotiable bonds in open market, without anybody's indorsement, and as a matter of business. The complainant company has, therefore, no right to the subrogation which it sets up in the present action."

If there was no subrogation, it seems clear that Mr. Palms or his representative cannot set up any use made of the loan, even after he obtained his bonds, as creating any estoppel whatever, and this view renders unnecessary any discussion as to whether any landowner was bound by estoppel. The equities of Mr. Palms must be determined from the condition of things existing when he obtained the bonds, as those alone would influence his action, and upon those alone could he rely.

Another question pressed upon the attention of the court is important, because jurisdictional. Suppose defendants did consent to the act of 1871, and did thereby render the law valid in all particulars except the provision empowering and requiring ministerial officers to collect the assessments; and let it be admitted for the purposes of the argument that the defendants were bound to bear the burdens imposed by the law, without regard to the receipt or nonreceipt of the benefits thereof,—still the question arises, what has

1 81 Ill. 49.

a court of equity of the United States to do with the matter? On what ground is the jurisdiction of the court sought to be maintained? There is no need to invoke the aid of equity if the act of 1871 is binding upon the defendants in all its parts. That act and the registration law provide all necessary machinery through the agency of the public officers. If the law failed as to any of its provisions for the assessment or collection of taxes, then will equity for that reason take jurisdiction? In a word, will the absence of any and all other effective remedies render it incumbent on the court to act or invest it with power so to do? It is not to be denied that a federal court will sometimes compel the collection of a tax. When a court of the United States renders a judgment, and there is an officer invested with power to collect taxes wherewith to discharge such judgment, and it is the lawful duty of such officers to make such collections, the United States courts will compel the discharge of such duties by writ of mandamus. But, in the absence of such officer or officers so empowered by state authority, the United States courts will not perform the duties of tax collectors. Walkley v. City of Muscatine, 6 Wall. 481; Rees v. City of Watertown, 19 Wall. 107; Heine v. Commissioners, 1 Woods, 246, Fed. Cas. No. 6,325, approved in State Railroad Tax Cases, 92 U. S. 575; Barkley v. Commissioners, 93 U. S. 265; Thompson v. Allen Co., 115 U. S. 550, 6 Sup. Ct. 140. In the foregoing authorities upon this question of jurisdiction it seems to be substantially settled that when the machinery for the collection of taxes is in existence under state authority, the federal courts will, in a limited class of instances, compel the agents of the state to set the machinery in motion; but those courts will neither themselves create the machinery, nor invest any person with official power to use the same. Complainants are not entitled to the relief prayed for, or to any relief in this court, under the pleadings and proofs in this cause.