FRANK et al. v. BUTLER COUNTY, NEB.

(Circuit Court of Appeals, Eighth Circuit.   June 2, 1905.)

No. 2,127.

1. MUNICIPAL CORPORATIONS—VALIDITY OF BONDS.

The Constitution of Nebraska authorized the issue of bonds by a county in aid of the construction of railroads on condition of the vote of the qualified electors of the county authorizing the same, with the proviso that the bonds or evidences of indebtedness so issued should not be valid unless the same shall have indorsed thereon a certificate signed by the Secretary and Auditor of State, showing that the same are issued pursuant to law.   Statutes were enacted by the state Legislature in execution of the constitutional provision, requiring that such bonds should be presented for registration to the state officer, and for their certification as aforesaid.   *Held*, that the bonds so authorized by such a vote, and issued by the county commissioners, without such registration and certification, were nonenforceable in an action at law against the county at the suit of the holder of such bonds.

2. EQUITABLE REMEDY AND LACHES.

The holder of a part of said bonds in 1880 presented them for registration and certification, which were refused by the State Auditor for the reason that the proposition submitted to the electors was in the alternative—for a subscription to one of two roads which should first comply with subsequent conditions, one of which did accept the subscription and comply with the conditions imposed.   In subsequent mandamus proceedings, at the relation of other holders of the same issue of bonds, to compel their registration and certification, the Supreme Court of the state upheld the action of the State Auditor.   In 1903 the present suit in equity was brought, alleging that said bonds were legally entitled to registration, and that the refusal of the State Auditor was wrongful.   Invoking the rule in equity that regards that as having been done which should have been done, the bill prays for a decree for the enforcement and collection of the bonds.   *Held*, in view of the long lapse of time and the changed conditions which have supervened, the remedy, if it existed in equity, is barred by reason of laches.

3. SAME—CONCURRENT REMEDY BY MANDAMUS—STATE AND FEDERAL COURTS.

The remedy by mandamus was recognized by the state statute and practice for review of the action of the State Auditor in refusing to register said bonds.   This remedy was equally open to the nonresident citizen in the federal court, which expired by the state statute of limitations within four years.   As the holder of said bonds had the right to invoke this legal remedy on the maturing of the annual interest coupons, a court of equity after the lapse of 20 years should decline any equitable relief.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

This is a bill in equity by appellants, the executrices of Augustus Frank, resident citizens of the state of New York, against the appellee, Butler county, in the state of Nebraska, seeking to recover the principal and interest of 40 bonds held by said Frank at the time of his death, claimed to have been issued

by said county in aid of the construction of the Lincoln & Northwestern Railroad Company.

On the 1st day of May, 1879, the commissioners of said county passed a resolution to submit a proposition to the voters of said county to vote aid "to the Lincoln & Northwestern Railroad Company or the Blue Valley & Northwestern Railroad Company." After due publication, the proposition so submitted was voted on by the qualified electors of the county and carried. The said resolution and order of submission provided that the commissioners should not be authorized to issue said bonds unless one of the railroad companies on or before July 1, 1879, should file in the office of the county clerk its written acceptance of the bonds provided for, should the same be authorized to be issued, and that the company so filing its acceptance would be entitled to have said bonds issued to it, to be delivered upon its compliance with the conditions for the construction of said road. The county commissioners found that said bonds had been so voted by the electors, and that the said Lincoln & Northwestern Railroad Company had accepted the proposition, and ordered the bonds to be issued to the trustee appointed in behalf of the railroad company and the county to deliver said bonds in accordance with the terms of said proposition. Afterwards, on the 1st day of July, 1879, the bill avers, said commissioners issued and delivered said bonds to the extent of $53,000, 106 in number, of the denomination of $500 each, with annual interest-bearing coupons attached thereto, bearing 8 per cent. interest. The bonds contained a recitation of the facts of said election, the act under which they were issued, etc. The bill avers that the law was complied with in the issuance of said bonds, and that the Blue Valley & Northwestern Railroad Company, named in the proposition, did not accept the proposition or construct said road. After the said bonds had been issued to said accepting railroad company, it delivered $40,000 thereof to Fitzgerald in payment of construction work upon the line of said railroad, which bonds the said Augustus Frank purchased of said Fitzgerald before any question was raised touching their legality. The bill admits that about the 26th day of July, 1880, after the said railroad had been constructed, the said county made protest against the legality of said bonds; that soon after said Frank purchased the bonds he presented them for registration and certification to the Auditor of State, which were refused, which offer was repeated on the 4th day of June, 1903, and they were again refused, for the reason that the proposition for voting said bonds was in the alternative; it being contended by said Auditor that, said proposition being in the alternative, there was no donee named therefor, and the bonds were not entitled to registration, which action of the said Auditor, the bill alleges, was wrongful, as that in law said bonds were entitled to registration as valid obligations of the county, notwithstanding the fact that said proposition was in alternative form. The bill then avers "that, by reason of the fact that said bonds have not been so registered and certified, complainants are remediless in the premises, and have no adequate remedy at law by which they can enforce the payment of said bonds and obligations, because of the wrongful and unlawful refusal on the part of the Auditor of State to register said bonds and to properly certify the same as required by law." To the bill of complaint the defendant county filed a demurrer, which was sustained by the court, to reverse which this appeal is prosecuted.

The Constitution of the state of Nebraska (article 12, § 2) declares that "no city, county, town, precinct, municipality, or other subdivision of the state, shall ever make donations to any railroad, or other works of internal improvement, unless a proposition so to do, shall have been first submitted to the qualified electors thereof, at an election by authority of law, provided, that such donations of a county with the donations of such subdivisions in the aggregate shall not exceed ten per cent. of the assessed valuation of such county, provided, further, that any city or county may, by a two thirds vote, increase such indebtedness five per cent. in addition to such ten per cent.; and no bonds or evidences of indebtedness so issued shall be valid unless the same shall have endorsed thereon a certificate signed by the Secretary and Auditor of State, showing that the same is issued pursuant to law." In conformity to this constitutional provision the Legislature enacted laws requiring the holder of such county bonds to present the same to the Auditor of State for

registration, upon his being satisfied that such bonds had been issued according to law, and requiring him and the Secretary of State to indorse a certificate to that effect on such bonds; declaring that "no such bonds shall be issued or be valid unless they shall be so registered and have endorsed thereon a certificate of said Auditor and Secretary of State, showing that such bonds are issued pursuant to law, the data filed in the office of said Auditor being the basis of such certificate."

The statute of the state (chapter 45) declares:

"Section 1. That any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commissioners of such county or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city; provided the county commissioners or city council shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter 9, of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money."

"Sec. 4. If two thirds of the votes cast at any such election for the purposes herein set forth be in favor of the proposition submitted, the county commissioners, in the case of a county, and the city council, in the case of a city, shall cause the proposition and result of the vote to be entered upon the records of said county or city, and a notice of its adoption to be published for two consecutive weeks in any newspaper in said county or city, if there be one, and shall thereupon issue said bonds, which shall be and continue a subsisting debt against such county or city until they are paid and discharged."

"Sec. 6. Any county or city which shall have issued its bonds, in pursuance of this act, shall be estopped from pleading want of consideration therefor, and the proper officers of such county or city may be compelled, by mandamus, or otherwise, to levy the tax herein provided to pay the same."

John L. Webster (Frank M. Hall, on the brief), for appellants. John C. Cowin, for appellee.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

That the bonds in question are unenforceable at law is not debatable. The Constitution above quoted expressly declares that "no bonds or evidences of indebtedness so issued shall be valid unless the same shall have endorsed thereon a certificate signed by the Secretary and Auditor of State showing that the same is issued pursuant to law." The act of the Legislature required the Auditor to examine the statement and bonds submitted to him for registration, and, if satisfied that they had been voted in conformity to law, he should record the statement and register the bonds in his office, and declares that no bonds shall be issued or be valid unless so registered, and having the certificate of the Auditor and Secretary of State indorsed thereon, showing that they were issued in pursuance of law, etc. The Supreme Court of Nebraska, in construing said constitutional provision and acts of the Legislature, has uniformly held that said registration and certification were prerequisites to the validity of such bonds, in whosesover hands found, as they bear evidence on their face that the law authorizing their transfer and circulation as commercial paper had not been complied with. State v. Babcock, 19 Neb. 223, 230, 27 N. W. 98; State v. Roggen, 22

Neb. 118, 34 N. W. 108. A like question was presented in the case of Anthony v. Jasper County, 101 U. S. 693, 25 L. Ed. 1005, under a similar act of the Legislature of. Missouri, requiring the registration of municipal bonds. It was held that the bonds issued without such registration, etc., conferred no right of action thereon on the purchaser and holder. See, also, Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153.

Indeed, the complainants concede the invalidity of the bonds without such registration and certification, and on this ground seek the aid of equity to validate them; the contention of complainants' counsel being that the State Auditor wrongfully refused to register the bonds on the ground of the objection to the alternative feature of the order of submission on which the vote was taken; that, in view of the description as to the location of the railroad and the direction it was to take, the submission was sufficiently definite; and that as the holder of the bonds was, in equity, entitled to have them registered and properly certified, it is competent for a court of equity, in recognition of the maxim that that which should have been done may be regarded as having been done, to declare that the complainants are entitled to a decree against the county for the amount of the principal and interest of said bonds.

The bonds in question were issued on the 1st day of July, 1879, and delivered to the railroad company, which transferred them to Fitzgerald, shortly after they were issued, in payment of construction work done by him on the railroad. The bill alleges "that Augustus Frank purchased eighty of said bonds, of the face value of forty thousand dollars, shortly after they had been issued," which inferentially was in 1880. The bill for relief was not filed until the 11th day of June, 1903, 23 years after the acquisition of the bonds. It is true that the principal of the bonds did not mature until the 1st day of July, 1899, but the coupons, representing interest, became due each year after July 1, 1879, each of which gave the holder the right to test the validity of the bonds in an action at law; and the statute gave to the holder the remedy of mandamus to compel the collection of taxes for the payment thereof. The bill discloses the further fact "that soon after the purchase of said bonds said Augustus Frank presented them to the Auditor of the state of Nebraska, and requested their registration and certification, both of which were refused." He was then advised by the State Auditor that they were regarded by him as invalid and not entitled to registration, on the ground that the alternative proposition submitted to the voters, making uncertain the donee named, rendered them invalid. Thus he was advised not only that the bonds lacked the required registration and certification by the designated officials of the state, but that those officers, to whom the law of the state intrusted the duty of ascertaining whether the bonds had been "issued pursuant to law," refused them registration and their attestation to entitle them to go upon the market. A cause of action then accrued to Frank to apply to the proper court for the writ of mandamus to compel said officers to register and certify to the bonds, if they wrongfully refused to act, or to resort to the remedy in

equity his executrices now invoke. There was then pending before the Supreme Court of Nebraska a bill in equity entitled Jones v. Hurlburt, 13 Neb. 125, 13 N. W. 5, in which Jones, a taxpayer of the county, suing on behalf of himself and other taxpayers, sought to enjoin the commissioners of Seward county, in said state, from issuing bonds voted in aid of a railroad, to test the validity of a like alternative proposition submitted to the voters, which bill was sustained by the Supreme Court on the ground that the submission was illegal. And on the 2d day of October, 1880, one Spruck, a taxpayer of said Butler county, in the state district court instituted a suit in equity against the county commissioners, the county treasurer, the Auditor and Secretary of State, and the Lincoln & Northwestern Railroad Company, setting out the proceedings respecting the submission of the question of the subscription involved in this case, and the subsequent action thereon, to enjoin the issue of said bonds, etc., and to enjoin said Auditor and Secretary from registering and certifying to the same. From the decree granting an injunction as prayed, an appeal was taken to the Supreme Court of the state, which affirmed said decree. Spurck v. Lincoln & N. W. R. Co., 14 Neb. 293, 15 N. W. 701. Later on, one Abby Gardner, the holder of one of said bonds, instituted in the Supreme Court of the state a proceeding in mandamus against the State Auditor to compel him to register one of said bonds of the issue involved in this case. See State v. Roggen, 22 Neb. 118, 34 N. W. 108, reported January, 1887. She claimed to be an innocent holder for value, in ignorance of the provisions of the state Constitution, etc., requiring the registration and certification of such bond. The Supreme Court followed the preceding decisions; holding the election void on the ground of the alternative proposition in the order of submission, and on the further ground that the bonds, without such registration and certification, were void. These cases establish the right, under the laws of Nebraska, to test the action of the Auditor and Secretary of State for refusing such registration and certification by the writ of mandamus. Against such action the statute of limitation runs in four years. State v. School District, 30 Neb. 520, 46 N. W. 613, 27 Am. St. Rep. 420. The statute of limitations of the state bars an action on the interest coupons in four years after maturity. During all these years the holder of these bonds could have brought suit in the state or federal court on the coupons to test the validity of the bonds. The only reason assigned in the bill of complaint for not resorting to an action at law on said coupons is that, by reason of the failure of the state officers to register and certify the bonds, no suit at law was maintainable.

It is utterly incredible to assume that the owner of these bonds, who knew as early as 1880 that the Auditor and Secretary of State refused to register and certify them on the ground of their invalidity, was not taking notice of the public litigation pending in the state respecting the validity of the bonds, and the public rulings of the courts thereon. As pertinently observed by Judge Hook, speaking for this court in the recent case of Williamson et al. v. Beardsley, 137 Fed. 467, "A party who has the opportunity of knowing the facts

of which he complains cannot avail himself of his inactivity, and thus escape the imputation of laches." During this great lapse of time between the issue of these bonds and the institution of this suit, lands in Butler county were being purchased by persons seeking homes therein. They had the right to assume that any holders of such outstanding claimed obligations of the county had acquiesced in the repeated decisions of the Supreme Court of the state declaring such bonds void, and that their property would not be burdened with assessments for their payment. The holder of said bonds is presumed to have known that no taxes were being imposed upon the property owners of said county for the payment of interest on the bonds, and that the administration of the county finances were not annually being arranged and adjusted with a view to such indebtedness. The men in office, the active participants in ordering and conducting the election and issuing the bonds, the state officers who refused their registration and certification, are all out of office. And after the lapse of 23 years many may be presumed to have moved from the state, and become scattered far and wide, and others of them may have died. After all these events and changes, these complainants come, pleading many facts existing alone in pais, invoking the aid of the court of conscience, which proceeds et æquo et bono, to afford them relief against the infirmities of the bonds at law, apparent on their face when bought. Equity favors the vigilant and active. Where a party seeks its aid, he should evince reasonable eagerness and promptness. He cannot lie dormant throughout a period of 20 years or more, with knowledge of the facts, and after conditions have changed and rights of third parties have supervened, and the relief sought would increase the burdens and hardships which have accumulated while he slept in indifference, expecting a court of equity to exert its extraordinary powers to assist him. "Courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, and refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights." Badger v. Badger, 2 Wall. 94, 17 L. Ed. 836. When the relief sought is based upon a right claimed to be purely equitable—cognizable alone in a court of conscience—equity acts upon its own inherent rules in respect of limitations, founded on a conservative sense of justice. The doctrine of laches being founded upon public policy, which, for the peace of society, discourages stale demands, where the party complaining has been guilty of gross negligence or deliberate delay, the court will refuse relief. Mackall v. Casilear, 137 U. S. 566, 11 Sup. Ct. 178, 34 L. Ed. 776.

Mr. Justice Brown, in Galliher v. Cadwell, 145 U. S. 372, 12 Sup. Ct. 873, 36 L. Ed. 738, speaking of the application of the doctrine of laches under varying conditions, said the courts "proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that, because of the change in condition or

relations during this period of delay, it would be an injustice to the latter to permit him to now assert them."

The case of O'Brien v. Wheelock, 184 U. S. 450, 22 Sup. Ct. 354, 46 L. Ed. 636 (first reported in [C. C.] 78 Fed. 673), while differing in some material particulars from this case, is most instructive and pertinent in some of its enunciations in the consideration of this case. Under an act of the General Assembly of Illinois, a large amount of bonds were issued by the commissioners of Pike county for the purpose of constructing a levee. Assessments had been made to pay for them against the lands alleged to have been benefited. Certain landowners contested the judgment on the assessments, and the act was adjudged by the Supreme Court of the state to be unconstitutional, so that the assessments and the bonds fell with the act. The bonds so issued were turned over to the contractor who constructed said levees in payment for his work. A large number of them were bought from said contractor by one Palms, who, after the lapse of several years, filed a bill in equity against the commissioners and others in the district for the purpose of collecting the amount of said bonds and interest, on the theory that the levee district had received the benefit of the proceeds of the bonds in the construction of the levee work, which inured to the benefit of the property owners of the district. Pending this suit leave was granted to the complainant to file an amended bill for the purpose of bringing in the landowners of the district to be affected by the decree sought. He took no action toward effecting such amendment for nine years, when he died, and the cause was sought to be revived by his representative in law. Mr. Chief Justice Fuller, in the course of his opinion, adverting to the fact of the failure of Palms to avail himself of the privilege given him to file such amended bill and to proceed, although a large amount of interest was unpaid, and although nearly $100,000 of the bonds of the first issue had fallen due, said:

"If the case depended alone upon the question of laches, there would be strong ground for holding that the plaintiffs and their testator so long delayed the institution of proceedings against the landowners that a court of equity ought to decline giving them any relief. * * * That the mere institution of a suit does not of itself relieve a person from the charge of laches, and, if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun."

Further on he said that the bill could not be maintained on the theory "of the validity of the act of 1871 [the act under which the bonds were issued], even though some other equity might have been asserted if in the exercise of reasonable diligence. The result is not inconsistent with the cases that hold that, although a law is found to be unconstitutional, a party who has received the full benefit under it may be compelled to pay for that benefit according to the terms of the law." He further maintained that the owners who participated in any way in the creation of the drainage district were as much interested in the invalidity of the law as Palms was in relying upon its validity when he bought the bonds. Referring

to the statute of limitation of the state, which barred actions on unwritten contracts, express or implied, within five years, he said:

"Courts of equity usually consider themselves bound by the statutes of limitation which govern courts of law in like cases. In the second aspect of their bill, appellants did not rely on their bonds as legal instruments, but they sought the aid of a court of equity for the enforcement of a lien in payment of the bonds by reason of an estoppel in pais, and the cause of action so created would seem to have been barred by that statute. But courts of equity go further in the promotion of justice, and, where laches exist, deny the relief sought, even though the statutory period may not have run under the applicable statute. The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief."

On the theory of the bill of complaint, the only impediment in the way of the collection of the bonds in a suit at law was the lack of the required registration of, and certification indorsed on, them, and that the ground on which the refusal to register and certify the bonds was bottomed was the misconception of said state officers respecting the alternative feature of the proposition submitted to the electors vitiating the election. As already shown, the validity of that objection could have been tested by the writ of mandamus. Frank, the holder of the bonds, a nonresident citizen of the state, had the right, if he preferred, to invoke that remedy in the federal court, and take its independent judgment on said question. "A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state court of the same locality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447. See, also, Cummings v. Bank, 101 U. S. 157, 25 L. Ed. 903; Schurmeier et al. v. Connecticut Mutual Life Insurance Co. (recently decided by this court) 137 Fed. 42. Instead of this course, Frank chose to stand inactive not only four years, whereby he permitted this adequate remedy at law to expire by limitation, but for twenty-three years, while all the changing conditions in Butler county, heretofore adverted to, were taking place, and then appeals to the equity side of the court to hear and try out the question of law and fact as to whether the bonds should have been registered and certified by the Auditor and Secretary of State. Under such conditions the door of a court of equity ought not to be opened to such a suitor to disturb the long repose of this bond controversy.

The decree of the Circuit Court is affirmed.